IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT COURT OF VIRGINIA
RICHMOND DIVISION



George A. Yarid,
          Plaintiff,

v.                              Civil Action No. **3:16-CV-00756-JAG**

Brennan *et al.*
          Defendant(s).

**PLAINTIFF'S RESPONSE AND CONTEMPORANEOUS OBJECTION
TO DEFENDANT YOUTUBE, LLC'S MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM (Doc. 37)
AND TO DEFENDANT YOUTUBE, LLC'S MEMORANDUM
IN SUPPORT (Doc. 38)
(VERIFIED UNDER THE PENALTY OF PERJURY)**

Comes now, Mr. George A. Yarid, *pro se* ("George") by his signature below, under the penalty of perjury, and after being first duly sworn, hereby states as follows:

**INTRODUCTION**

This a lawsuit filed by George, against Shon Brennan, William Markland, and YouTube, LLC. Relevant hereto, are George's claim of copyright infringement against YouTube, LLC.. George, is suing Defendant, YouTube, LLC because YouTube, LLC has, and continues to infringe on George's copyrighted material. George asserted this fact in his *Second Amended Complaint*, and will further illustrate herein, that the copyright violation being committed by YouTube, LLC is not protected under Section 230 of the Communications Decency Act because, YouTube, LLC is not an "Internet Service Provider," but to the contrary is merely a privately owned website. In addition, George, on many occasions, has reached out to YouTube personally, and explained that the information on their website is copyrighted material, which George owns,

which George has not given permission to be shared, and which George has demanded YouTube, LLC to remove. George can demonstrate with concrete and factual, material evidence that on multiple occasions he has clearly and respectfully, and ultimately demanded YouTube, LLC to remove from certain channels on YouTube's website, which they have plainly ignored or denied. Their *Motion to Dismiss*, for the following reasons, must be denied, and this case be set for trial.

## YOUTUBE, LLC IS NOT PROTECTED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT OF 1996

Section 230 of the Communications Decency Act of 1996 (a common name for Title V of the Telecommunications Act of 1996) is landmark legislation in the United States, codified at 47 U.S.C. § 230 ("CDA"). Section 230(c)(1) which provides immunity from liability for providers and users of an "interactive computer service" who publish information provided by others:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

In analyzing the availability of the immunity offered by this provision, Courts generally apply a three-prong test. A defendant must satisfy each of the three prongs to gain the benefit of the immunity:

1. The defendant must be a "provider or user" of an "interactive computer service."

2. The cause of action asserted by the plaintiff must treat the defendant as the "publisher or speaker" of the harmful information at issue.

3. The information must be "provided by another information content provider," i.e., the defendant must not be the "information content provider" of the harmful information at issue.

Section 230 of the Communications Decency Act was not part of the original Senate

legislation, but was added in conference with the House of Representatives, where it had been separately introduced by Representatives Christopher Cox (R-CA) and Ron Wyden (D-OR) as the Internet Freedom and Family Empowerment Act and passed by a near-unanimous vote on the floor.

Unlike the more controversial anti-indecency provisions which were later ruled unconstitutional, this portion of the Act remains in force and allows ISPs and other service providers to restrict customers' actions without fear of being found legally liable for the actions that are allowed. The act was passed in part in reaction to the 1995 decision in *Stratton Oakmont, Inc. v. Prodigy Services Co.*, 31063/94, 1995 WL 323710, 1995 N.Y. Misc. LEXIS 712 (N.Y. Sup. Ct. 1995), which suggested that service providers who assumed an editorial role with regard to customer content, thus became publishers, and legally responsible for libel and other torts committed by customers. This act was passed to specifically enhance service providers' ability to delete or otherwise monitor content without themselves becoming publishers.

In *Zeran v. America Online, Inc.*, the Court notes that "Congress enacted § 230 to remove the disincentives to self-regulation created by the *Stratton Oakmont* decision. 129 F.3d 327, 331 (4th Cir. 1997). Under that court's holding, computer service providers who regulated the dissemination of offensive material on their services risked subjecting themselves to liability, because such regulation casts the service provider in the role of a publisher. Fearing that the specter of liability would therefore deter service providers from blocking and screening offensive material, Congress enacted § 230's broad immunity "to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material.

In addition, *Zeran* notes "the amount of information communicated via interactive computer services is . . . staggering. The specter of tort liability in an area of such prolific speech would have an obviously chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems. Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect." *Id.*

Section 230 immunity is not unlimited. The statute specifically excepts: 1.) federal criminal liability and 2.) intellectual property claims. 47 U.S.C. §§ 230(e)(1) (criminal) and (e)(2) (intellectual property); see also *Gucci America, Inc. v. Hall & Associates*, 135 F. Supp. 2d 409 (S.D.N.Y. 2001) (no immunity for contributory liability for trademark infringement).

## THE GORGEOUS GEORGE SHOW IS INTELLECTUAL PROPERTY

Intellectual property is a property right that can be protected under federal and state law, including copyrightable works, ideas, discoveries, and inventions. The term intellectual property relates to intangible property such as patents, trademarks, copyrights, and trade-secrets. Thus, in today's legal marketplace most registered patent attorneys hold themselves out as intellectual property law attorneys, as opposed to merely a patent attorney.[1]

---

[1] A patent is the right to exclude others from making, using or selling the invention throughout the United States of America. In short, others may not make, use or sell the patented invention without the authorization of the patent owner. A patent then, is a limited monopoly granted by the government for the term period of the patent. After the patent expires, anyone may make, use or sell the invention. The issuance of patents, trademarks, and copyrights is governed at the federal level by the standards and regulations of the U.S. Patent and Trademark Office.
Trademarks identify the goods of one manufacturer from the goods of others. Trademarks are important business assets because they allow companies to establish their products reputation without having to worry that an inferior product will diminish their reputation or profit by deceiving the consumer. Trademarks include words, names, symbols and logos. The intent of trademark law is to prevent consumer confusion about the origin of a product. In the United States trademarks may be protected by both Federal statute under the Lanham Act, 15 U.S.C. §§ 1051 -

The U.S. Copyright Act, 17 U.S.C. §§ 101 - 810, is federal legislation enacted by Congress under its Constitutional grant of authority to protect the writings of authors. See U.S. Constitution, Article I, Section 8. Evolving technology has led to an ever expanding understanding of the word "writings". The Copyright Act now covers architectural design, software, the graphic arts, motion pictures, and sound recordings. Because federal legislation invalidates inconsistent state law, the copyright field is almost exclusively a Federal one.

A copyright gives the owner the exclusive right to reproduce, distribute, perform, display, or license his work. The owner also receives the exclusive right to produce or license derivatives of his or her works. Limited exceptions to this exclusivity exist for types of "fair use," such as book reviews. Under current law, works are covered whether or not a copyright notice is attached and whether or not the work is registered. The federal agency charged with administering the act is the Copyright Office of the Library of Congress.

Intellectual property (IP) is an intangible creation of the human mind, usually expressed or translated into a tangible form, in George's case, to-wit: The Gorgeous George Show, that is assigned certain rights of property. Examples of intellectual property include an author's copyright on a book or article, a distinctive logo design representing a soft drink company and its products, unique design elements of a web site, or a patent on a particular process to, for example, manufacture chewing gum. Intellectual property law covers the protection of copyrights, patents, trademarks, and trade secrets, as well as other legal areas, such as unfair competition. In effect, intellectual property laws give the creator of a new and unique product or idea a temporary monopoly on its use.

---

1127, and states' statutory and/or common laws.

The value of intellectual property to an individual or company is not based on physical properties, such as size and structure. Instead, intellectual property is valuable because it represents ownership and an exclusive right to use, manufacture, reproduce, or promote a unique creation or idea. In this way, it has the potential to be one of the most valuable assets a person or small business can own.

The products of the human intellect that comprise the subject matter of intellectual property are typically characterized as non-rivalrous public goods. Essentially, this means that the same product may be used simultaneously by more than one person without diminishing the availability of that product for use by others. In the words of Thomas Jefferson:

> "If nature has made any one thing less susceptible than all others of exclusive property, it is the action of the thinking power called an idea, which an individual may exclusively possess as long as he keeps it to himself; but the moment it is divulged, it forces itself into the possession of everyone, and the receiver cannot dispossess himself of it. Its peculiar character, too, is that no one possesses the less, because every other possesses the whole of it. He who receives an idea from me, receives instruction himself without lessening mine; as he who lights his taper at mine, receives light without darkening me."

YouTube's allegation that the Gorgeous George Show, and all of its content, is not protected by valid Copyright, and that YouTube is immune from suit by Section 230 of the CDA, is intellectually dishonest. The Gorgeous Show's Copyright Registration Number with the Law Library of Congress is : Pau003693089 / 2013-08-16, created on July 17, 2013, and filed on August 16, 2013, the same which solidifies all of The Gorgeous Show *in toto*.

## YOUTUBE, LLC IS ALSO NOT PROTECTED BY
## THE DIGITAL MILLENNIUM COPYRIGHT ACT (DMCA)

The Digital Millennium Copyright Act (DMCA) is a United States copyright law that implements two 1996 treaties of the World Intellectual Property Organization (WIPO). It criminalizes production and dissemination of technology, devices, or services intended to circumvent measures (commonly known as digital rights management or DRM) that control access to copyrighted works. It also criminalizes the act of circumventing an access control, whether or not there is actual infringement of copyright itself. In addition, the DMCA heightens the penalties for copyright infringement on the Internet. Passed on October 12, 1998, by a unanimous vote in the United States Senate and signed into law by President Bill Clinton on October 28, 1998, the DMCA amended Title 17 of the United States Code to extend the reach of copyright, while limiting the liability of the providers of online services for copyright infringement by their users.

The DMCA's principal innovation in the field of copyright is the exemption from direct and indirect liability of Internet service providers and other intermediaries. This exemption was adopted by the European Union in the Electronic Commerce Directive 2000. The Copyright Directive 2001 implemented the 1996 WIPO Copyright Treaty in the EU.

### Title II: Online Copyright Infringement Liability Limitation Act

DMCA Title II, the Online Copyright Infringement Liability Limitation Act ("OCILLA"), creates a safe harbor for online service providers (OSPs, including ISPs) against copyright infringement liability, provided they meet specific requirements, to: wit-OSPs must adhere to and qualify for certain prescribed safe harbor guidelines and promptly block access to

alleged infringing material (or remove such material from their systems) when they receive notification of an infringement claim from a copyright holder or the copyright holder's agent.

Attached hereto marked as *Plaintiff's Exhibit 1* is a Copyright Infringement Notification Confirmation from George to YouTube, LLC, dated January 18, 2016, advising YouTube that a video posted on their website at:

*http://www.youtube.com/watch?v=OSzcqOoXqOIs;*

*http://www.youtube.com/watch?v=yj16myeVrBE;*

*http://www.youtube.com/watch?v=CQH3SIDgrNY;*

*http://www.youtube.com/watch?v=S0oWzUqCaIM;* and

*http://www.youtube.com/watch?v=D26cAyRzqK8;*

was his copyrighted work, which George swore to under the penalty of perjury. Defendant YouTube, LLC, notwithstanding this notification, then, knowingly and intentionally authorized the continued Copyright infringement of George's Copyrighted work to continue, in violation of the Law. Therefore, Title II of the DCMA deprives them of the immunity upon which they claim safe harbor.

Attached hereto as *Plaintiff's Exhibit 2* is an email from George to copyright@youtube.com, dated May 31, 2016, wherein George explicitly states to YouTube's Copyright Service that George is the owner and creator of the Gorgeous George Show, and that Youtube.com is "Stealing [his] intellectual property." Attached hereto as, *Plaintiff's Exhibit 3, 4, and 5* are additional emails from George to YouTube, LLC's copyright service email, directly complaining to them that The Gorgeous George Show is his copyrighted material, where he is

pleading with them to respect his intellectual property, which they refused to do.

Defendant YouTube, LLC had been advised by George that the following links, all last viewed June 22nd, 2017:

*https://www.youtube.com/user/HappySnoutHour?feature=hovercard*;

(Entitled Happy Snout Hour);

*https://www.youtube.com/channel/UCR-NCNNfN8NPdKAIGsBEKKA*

(Entitled Old Man Henry Pwns Gorgeous George in his A-Hole)

*https://www.youtube.com/channel/UCb_PT6UDujEdsfFxZXxnq4A*

(Entitled Gorgeous George's Quioccasin Road Blues)

*https://www.youtube.com/channel/UChBhwuLhxpaEO0mIeJJlyKw*

(Entitled An Gorgeous George Trollmas)

*https://www.youtube.com/channel/UCsKxtG8KpxYV3Dx924JNErA*

(Entitled Gorgeous George's Official Youtube Channel)

*https://www.youtube.com/channel/UCLRm0ZSL_DWAsZMNjkZbIBg*

(Entitled GorgeousGeorgeTheFalseFlaggot),

and which were posted by Defendant Shon Brennan, contain George's copyrighted material, which goes well beyond the scope of any fair use claim, that is nothing more than defamation and harassment.

Defendant YouTube, LLC had been advised by George that the following links, all last viewed June 22nd, 2017:

*https://www.youtube.com/channel/UCl3TpnL2U2YjnUmPRZLxd3Q* (Entitled In the Real World);

*https://www.youtube.com/channel/UCJDdZzOpM68NtUeIi2eAwmw*

(Entitled Fair Use Fever);

*https://www.youtube.com/user/ALAUGHFROMTHEPAST*

(Entitled A Blast from the Past;

*https://www.youtube.com/channel/UCv454HljVdgcyp6vkfq86jQ*

(Entitled Ali Mahmoud Abdul Hassan Johnson);

*https://www.youtube.com/channel/UC6w1QrZG35sQczJ5wcl12bw*

(Entitled Goldenageofcinema);

*https://www.youtube.com/channel/UCoRmupsaL9TbU0ppd_VUwRg*

(Entitled George Yarid's Cell Phone Number Is 804-836-2016 .

These videos are created from defendant Will Markland, and allowed to remain on Youtube.com even after George, in writing, on multiple occasions, illustrated to YouTube, LCC that they were his copyrighted works, yet still remain "live" as of this writing, all of which contain George's copyrighted material, which goes well beyond the scope of any fair use claim, that is nothing more than defamation and harassment.

Other channels which are by anonymous that need to be removed are:

*https://www.youtube.com/channel/UCp1D9TR0S-vV66rdr0lqZCQ*

(Entitled KrispieFeet-n-Raisins); and

*https://www.youtube.com/user/CaptainCorpulence*

(Entitled CaptainCorpulence), and with *Bacon Street* and *ChrisdelaCruz* all of which contain George's copyrighted material, which goes well beyond the scope of any fair use claim, that is nothing more than defamation and harassment.

The foregoing website URL's all posted on Youtube.com, contain George's copyright material. Even should this Court determine that Defendant YouTube, LLC is not liable to George for money damages, his *Second Amended Complaint* prays for an injunction, praying that YouTube, LLC be ordered to remove the copyright material, which is clearly listed above, which is not protected by either the CDA nor the DMCA.

### PERMISSION FOR LEAVE TO AMEND COMPLAINT TO AVOID THE MISCARRAIGE OF JUSTICE THAT WOULD OTHERWISE RESULT

Though George is *pro se* Litigant, he prays this Court will liberally construe his pleading as stating a cognizable claim against Defendant YouTube, LLC. Though YouTube, LLC could have moved for a more Definite Statement under Rule 12 of the *Federal Rules of Civil Procedure*, they chose simply to move to dismiss.

As clearly illustrated, George does have cognizable claims of copyright infringement by Defendant Youtube, LLC, which are exempt from both the CDA and DMCA. Therefore, instead of granting their motion, which could result in *res judicata* as to these claims upon which relief must be granted, that George be given an opportunity to amend his *Second Amended Complaint* with the specifics necessary to state a claim that survives their motion to dismiss.

### THE URLS COMPLAINED OF ARE ALL VIOLATIONS OF YOUTUBE.COM'S TERMS OF SERVICE

11


*https://www.youtube.com/watch?v=OaNdX4gKkNY&t=1925s* from 17:55 to 18:06 shows the graphic material going against YouTube's own guidelines, this particular video, authored by Shon Brennan, and still posted on at the aforesaid URL, which George has, on repeated occasions, begged and pleaded with, YouTube, LLC to remove, depicts George being anally penetrated by another person at George's Mother's Grave Site. This is a clear and unambiguous violation of Defendant YouTube's terms of service set forth at *https://www.youtube.com/static?template=terms.*

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff George A. Yaird, proceeding *pro se* hereby prays that this Court will enter an order dismissing YOUTUBE, LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Doc. 37) & THEIR MEMORANDUM IN SUPPORT (Doc. 38), or grant George leave pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to Amend his *Second Amended Complaint* to state specifically the facts and laws asserted hereinabove, to avoid the miscarriage of justice that will otherwise result, and allow and provide an oral hearing on the same prior to any adverse ruling to avoid the miscarriage of justice that will undoubtedly otherwise result.

Mr. George Yarid
Pro se Plaintiff
1307 Stoney Creek Drive
Henrico, Virginia 23238
(804) 836-2016
Gorgeousgeorgeshow1@netzero.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certifies that a true and complete copy of the foregoing *Motion for Default Judgment* was duly served, via US Mail, Postage Prepaid, on the 22nd day of June, 2017, upon:

>Peter Cornelius Holm
>1 Market Plaza, Suite 3300
>San Francisco CA. 94105
>
>David Harrison Kramer
>650 Page Mill Road
>Palo Alto, CA 94304
>
>Veronica Ascarrunz
>1700 K Street, N.W., Suite No. 500
>Washington DC, 20006
>
>William Markland
>11271 Ostego Street
>North Hollywood, CA 91601
>
>Shon Brennan
>5809 Los Amigo Street
>Buena Park, CA 90620

>Mr. George Yarid
>Pro se Plaintiff
>1307 Stoney Creek Drive
>Henrico, Virginia 23238
>(804) 836-2016
>Gorgeousgeorgeshow1@netzero.com

## DECLARATION AND VERIFICATION OF PLAINTIFF GEORGE A. YARID

I, the undersigned, have written and read the foregoing PLAINTIFF'S RESPONSE AND CONTEMPORANEOUS OBJECTION TO DEFENDANT YOUTUBE, LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Doc. 37) AND TO DEFENDANT YOUTUBE, LLC'S MEMORANDUM IN SUPPORT (Doc. 38) (VERIFIED UNDER THE PENALTY OF PERJURY) pleading, and hereby verify that the matters alleged therein are true. I certify under the penalty of perjury that the facts asserted herein is true and correct.

Executed at Richmond, Virginia, on the 22nd day of June, 2017.

<div style="text-align:right">
Mr. George Yarid<br>
Pro se Plaintiff<br>
1307 Stoney Creek Drive<br>
Henrico, Virginia 23238<br>
(804) 836-2016<br>
Gorgeousgeorgeshow1@netzero.com
</div>